## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## SOUTHERN DIVISION

**JERRY COOKSEY**                                                    **PLAINTIFF**

**v.**                                                    **Civil No. 1:16cv448-HSO-JCG**

**CITY OF GAUTIER and DANTE**
**ELBIN,** *in his Official Capacity as*
*Chief of Police for the City of Gautier*
*and Individually*                                                    **DEFENDANTS**

## <u>MEMORANDUM OPINION AND ORDER GRANTING MOTION [11] OF DEFENDANT DANTE ELBIN IN HIS INDIVIDUAL CAPACITY FOR SUMMARY JUDGMENT AS TO QUALIFIED IMMUNITY AND DENYING PLAINTIFF'S MOTION [25] FOR LEAVE TO AMEND</u>

BEFORE THE COURT is the Motion [11] for Summary Judgment as to Qualified Immunity filed by Defendant Dante Elbin ("Chief Elbin") in his individual capacity and the Motion [25] for Leave to Amend filed by Plaintiff Jerry Cooksey ("Cooksey"). Cooksey brings claims under 42 U.S.C. § 1983 against Defendants City of Gautier, Mississippi, and Chief Elbin in his official and individual capacities. Cooksey, a former Gautier police officer, claims that he reported to Chief Elbin and the City administration that City employees were committing numerous crimes. Chief Elbin allegedly responded by demoting Cooksey to a less desirable position, and Cooksey was eventually terminated from his employment with the City.

Before discovery commenced, Chief Elbin moved for summary judgment on the basis of qualified immunity. Cooksey initially responded by requesting the Court to allow discovery into his claims, but the Magistrate Judge and then this

Court denied this request.  Orders [17][22].  Cooksey has now filed a Response [26] to Chief Elbin's Motion for Summary Judgment, and has separately filed a Motion [25] for Leave to Amend.  After due consideration of the record, the submissions on file, and relevant legal authority, the Court finds that Chief Elbin's Motion should be granted, and Cooksey's claims against him in his individual capacity should be dismissed with prejudice.  The Court further finds that Cooksey's Motion for Leave to Amend should be denied.  Cooksey's claims against the City and Chief Elbin in his official capacity will proceed.

## I. BACKGROUND

A.    Factual background

According to the Amended Complaint, which is the operative pleading, Cooksey was employed as a police officer with the City of Gautier, Am. Compl. [8] ¶ 7, and worked as Captain of Administration, which according to him was second-in-command to the police chief, *id.* ¶ 8.  Chief Elbin was the chief of police.  *See id.* ¶ 10.  Cooksey alleges that he learned of criminal acts being committed within the police department, such as employees fabricating time cards, improperly spending grant funds, and committing fraud, embezzlement, and tax evasion.  *Id.* ¶ 11-15. Cooksey reportedly informed Chief Elbin of these criminal acts.  *Id.* ¶ 10.

Cooksey claims that during the summer of 2015 he informed City Manager Samantha Abell about the alleged crimes he had reported to Chief Elbin.  *Id.* ¶ 19. Abell allegedly became irritated with Cooksey and accused him of lying, *id.*, and presented a report to Chief Elbin stating that Cooksey was attempting to

undermine the Chief, *id.* ¶ 22.  Abell purportedly discussed Cooksey's claims of criminal conduct with Chief Elbin, who in turn admonished Cooksey for reporting to Abell.  *Id.* ¶ 22, 24.  Cooksey was later transferred to the position of Captain of the Patrol Division, which according to Cooksey, was "a demotion which was much less desirable than Captain of Administration."  *Id.* ¶ 24.

In September 2016, the new City Manager, Paula Yancey, and City Attorney Josh Danos placed Cooksey on leave.  *Id.* ¶ 29.  Yancey and Danos questioned Cooksey about Abell's prior report, and Cooksey was then given the option to resign in lieu of termination.  *Id.* ¶¶ 29-30.  Cooksey asserts that the City concocted false reasons for his termination, namely that he had sexually harassed another employee.  *Id.* ¶ 32.  Cooksey ultimately resigned, but now alleges that the City forced him under coercion and duress to waive any claims he may have against the City.  *Id.* ¶ 39.

B.    Procedural history

1.    Initial pleadings

Cooksey filed a Complaint [1] in this Court on December 29, 2016, advancing claims under 42 U.S.C. § 1983 for deprivation of his freedom of speech.  Compl. [1] at 8.  On April 13, 2017, the City of Gautier and Chief Elbin filed an Answer [3], raising numerous defenses, including that Chief Elbin is entitled to qualified immunity.  Answer [3] at 9.  On July 19, 2017, the Magistrate Judge stayed proceedings, including discovery, on grounds that Defendants had raised sovereign and qualified immunity as affirmative defenses.

On September 1, 2017, Cooksey filed an Amended Complaint [8]. The Amended Complaint advances a claim under 42 U.S.C § 1983 styled as a cause of action for "Due process – freedom of speech." Am. Compl. [8] at 8. Cooksey alleges that "Defendants retaliated against Cooksey" for exercising his constitutional right to free speech by complaining of and reporting the unlawful acts, *id.*, and that Defendants had no good faith basis for the retaliatory termination, *id.*

The Amended Complaint seeks a declaratory judgment that Cooksey's release of any claims he may have against the City is invalid based on numerous contract defenses and is a violation of his constitutional rights to free speech and to petition the government. *Id.* Cooksey raises a "taxpayer cause of action" on grounds that Defendants unlawfully expended taxpayer funds in violation of state and federal law. *Id.* at 9. Lastly, Cooksey claims that by terminating him for reporting criminal acts, "Defendants violated Mississippi's public policy exception to at will employment." *Id.*

2.  <u>Chief Elbin's Motion for Summary Judgment</u>

Chief Elbin has filed a Motion [11] for Summary Judgment as to Qualified Immunity, contending that he is entitled to qualified immunity in his individual capacity because he did not violate Cooksey's clearly established constitutional rights. Def.'s Mem. [12] at 8-9, 14-15. Chief Elbin argues that Cooksey did not suffer an adverse employment action when he was transferred from the Administration Division to the Patrol Division. *Id.* at 11-13. Chief Elbin further posits that "[i]t appears Cooksey is attempting to attribute his termination to

4

Elbin," and maintains that he is entitled to summary judgment on this claim because Cooksey cannot present any facts to show that Chief Elbin terminated Cooksey, when in fact it was City Manager Yancey who did so. *Id.* at 8, 10.

Cooksey countered by filing a Motion [15] for Leave to Conduct Discovery, asserting that he was entitled to conduct immunity-related discovery in order to respond to Chief Elbin's Motion for Summary Judgment. Mot. [15] at 1. Cooksey argued that the Motion for Summary Judgment raised factual issues of "[w]hether Cooksey's transfer from Administration to Patrol constitutes an 'adverse action,'" and "[w]hether Defendant Elbin had any involvement with Cooksey's termination." *Id.* at 1-2. Chief Elbin responded that Cooksey's discovery request was overbroad and requested that the Court enter a narrowly-tailored order limiting discovery to whether Cooksey's transfer was the equivalent of a discharge. Def.'s Resp. [16] at 3. Chief Elbin pointed out that "Cooksey's Complaint does not allege that Elbin terminated Cooksey's employment." *Id.*

In an Order [17] entered on November 17, 2017, the Magistrate Judge denied Cooksey's Motion for Leave to Conduct Discovery, finding that Cooksey "fails to even address the Court's considerations relevant to determining the necessity of immunity-related discovery." Order [17] at 4. The Magistrate Judge noted that Cooksey did not argue or explain how his Amended Complaint pleaded specific facts which, if true, would overcome Elbin's qualified immunity. *Id.* at 5.

Cooksey objected to the Magistrate Judge's Order, maintaining that he could not respond to the Motion for Summary Judgment without conducting discovery

into whether Cooksey's transfer constituted an adverse action and whether Chief Elbin was involved with Cooksey's termination. Pl.'s Obj. [18] at 1, 7-8. On April 18, 2018, this Court found in its Order [22] that Cooksey's Amended Complaint does not contain any specific allegation that Chief Elbin terminated him, but rather asserts that the City and other administrators did. Order [22] at 11. The Court affirmed the Magistrate Judge's denial of Cooksey's discovery request on this issue. *Id.* The Court also agreed with the Magistrate Judge's refusal to permit discovery into the question of Cooksey's transfer because relevant information regarding whether the reassignment was adverse to Cooksey should be within Cooksey's own knowledge and possession, and he failed to demonstrate a need for discovery to oppose summary judgment on that claim. *Id.* at 12. The Court ordered Cooksey to respond to Chief Elbin's Motion for Summary Judgment. *Id.* at 13-14.

In response to the Court's Order, on May 13, 2018, Cooksey filed a Response in opposition to the summary judgment motion, asserting that his transfer to Captain of Patrol constituted an adverse employment action because such position is less prestigious, involves fewer duties, and provides less room for advancement. Pl.'s Mem. [26] at 7. Furthermore, according to Cooksey, Chief Elbin uses such transfers as punishment. *Id.* at 5-6. Cooksey also argues that whether Chief Elbin caused his termination remains a disputed question of fact, as evidenced by Cooksey's allegations that Chief Elbin was involved with the investigation that led to Cooksey's termination and that it is City policy that Chief Elbin approve any decision to terminate a police officer. *Id.* at 8-9.

6

Chief Elbin maintains in his Reply that the Amended Complaint's bald allegations, conclusory statements, and broad accusations against all Defendants fail to meet the heightened pleading standard necessary to overcome qualified immunity.  Reply [28] at 2-3.

3.    Cooksey's Motion to Amend Complaint

The same day he responded to the Motion for Summary Judgment, Cooksey filed a Motion [25] for Leave to Amend, seeking to amend his Amended Complaint "to clarify the factual basis for his claims" against Chief Elbin.  Mot. [25] at 1. Attached as an exhibit to Cooksey's Motion is his proposed Second Amended Complaint, which alleges that the transfer to Captain of Patrol was "a demotion which was much less desirable than Captain of Administration with less responsibility, less rapport, and lower standing in the department."  Proposed Second Am. Compl.  [25-1] ¶ 24.  According to the proposed Second Amended Complaint, "[t]he Captain of Administration was considered second in command to the chief."  *Id.* ¶ 25.  This proposed new pleading further alleges that "Chief Elbin has a history of transferring officers from Captain of Administration to Captain of Patrol as punishment," and the transfer "hindered Cooksey's ability to learn information about the criminal acts" he uncovered.  *Id.* ¶¶ 25-26.

The proposed Second Amended Complaint also seeks to add factual allegations regarding Chief Elbin's role in Cooksey's termination.  Cooksey asserts that it is the City's practice, policy, and custom for any decision involving police department personnel to "involve the input of or be made by Chief Elbin."  *Id.* ¶ 33.

Chief Elbin allegedly "was involved with the investigation which led to Cooksey's termination" and "was the individual who made the final call on the decision to terminate Cooksey." *Id.* Cooksey maintains that the "City and Chief Elbin concocted false, grossly misleading, and fabricated grounds for Cooksey's termination." *Id.* ¶ 36.

Defendants respond that Cooksey's Motion for Leave to Amend should be denied because he seeks to raise new theories of recovery by alleging Chief Elbin terminated his employment. Def.s' Mem. [29] at 6-7. Noting that Cooksey has already filed a Complaint and an Amended Complaint, Defendants assert that Cooksey has repeatedly failed to cure deficiencies in his pleadings. *Id.* at 7-8. Chief Elbin contends that he will be unduly prejudiced if Cooksey is allowed a third bite at the apple by filing his proposed Second Amended Complaint because Chief Elbin would be required to amend his summary judgment motion and Cooksey would be allowed to conduct discovery. *Id.* at 8-9. Lastly, Defendants argue that Cooksey's proposed amendments are futile because there is no evidence that Chief Elbin terminated Cooksey. *Id.* at 9.

## II. <u>DISCUSSION</u>

A.  <u>Relevant legal standards</u>

1.  <u>Summary judgment standard</u>

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If the movant carries this burden, "the

nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

To rebut a properly supported motion for summary judgment, the opposing party must show, with "significant probative evidence," that there exists a genuine issue of material fact. *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000). "A genuine dispute of material fact means that evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Royal v. CCC&R Tres Arboles, L.L.C.*, 736 F.3d 396, 400 (5th Cir. 2013) (quotation omitted). If the evidence is merely colorable, or is not significantly probative, summary judgment is appropriate. *Cutting Underwater Techs. USA, Inc. v. ENI U.S. Operating Co.*, 671 F.3d 512, 516 (5th Cir. 2012) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). In deciding whether summary judgment is appropriate, the Court views facts and inferences in the light most favorable to the nonmoving party. *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 858 (5th Cir. 2010).

2. <u>Motions to amend pleadings</u>

The Federal Rules of Civil Procedure provide that "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). "Rule 15(a) evinces a bias in favor of granting leave to amend." *Chitimacha Tribe of La. v. Harry L. Laws Co., Inc.*, 690 F.2d 1157, 1162 (5th Cir. 1983). Consequently, "there is a strong presumption in favor of granting leave to amend[.]" *Ackerson v.*

*Bean Dredging LLC*, 589 F.3d 196, 208 (5th Cir. 2009).  As this strong presumption exists, "[t]he district court must have a 'substantial reason' to deny a request for leave to amend."  *Lyn–Lea Travel Corp. v. Am. Airlines*, 283 F.3d 282, 286 (5th Cir. 2002) (quoting *Jamieson v. Shaw*, 772 F.2d 1205, 1208 (5th Cir. 1985)).  In deciding whether to grant a motion to amend, the district court may consider a variety of factors, including "undue delay, bad faith or dilatory motive on the part of the movant, repeated failures to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility of the amendment."  *Marucci Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014).

The Fifth Circuit "has previously emphasized that the fact that a defendant has filed a motion for summary judgment is significant in the determination whether a plaintiff's subsequent motion to amend is timely."  *Little*, 952 F.2d at 846 n.2, on reh'g en banc, 37 F.3d 1069.  Accordingly, courts "more carefully scrutinize a party's attempt to raise new theories of recovery by amendment when the opposing party has filed a motion for summary judgment."  *Parish v. Frazier*, 195 F.3d 761, 764 (5th Cir. 1999).  This is particularly true when an amendment would require additional discovery or another round of dispositive motions.  *Squyres v. Heico Companies, L.L.C.*, 782 F.3d 224, 239 (5th Cir. 2015).

3.  <u>Qualified immunity</u>

"The doctrine of qualified immunity protects public officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Ramirez*

*v. Martinez*, 716 F.3d 369, 375 (5th Cir. 2013) (citation omitted). To determine whether a public official is entitled to qualified immunity, a court looks to: (1) whether the facts that the plaintiff has alleged make out a violation of a constitutional right; and (2) whether the right at issue was clearly established at the time of the defendant's alleged misconduct. *See id.* A court may conduct the two-pronged qualified immunity inquiry in any sequence. *Manis v. Lawson*, 585 F.3d 839, 843 (5th Cir. 2009).

"A qualified immunity defense alters the usual summary judgment burden of proof. Once an official pleads the defense, the burden then shifts to the plaintiff, who must rebut the defense by establishing a genuine fact issue as to whether the official's allegedly wrongful conduct violated clearly established law." *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010) (citation omitted).

B.    Analysis

1.    Chief Elbin's Motion for Summary Judgment

a.    Cooksey raises First Amendment retaliation claims.

Cooksey's Amended Complaint advances claims pursuant to 42 U.S.C. § 1983 under "Due Process – Freedom of Speech." Am. Compl. [8] at 8. Though the Amended Complaint invokes the Due Process Clause, the factual allegations demonstrate that the substance of Cooksey's claim is that of a First Amendment retaliation claim. The Amended Complaint alleges that "Defendants retaliated against Cooksey for exercising his [c]onstitutional [r]ights in making complaints" and that the "motivating reason for the Defendants' retaliation against Cooksey are

the complaints and claims made by Cooksey, which are protected free speech and are matters of public concern." *Id.* Moreover, Cooksey identifies in his Response that his "claims under 42 U.S.C. § 1983 are First Amendment retaliation claims." Pl.'s Resp. [26] at 5.

> To establish a § 1983 claim for employment retaliation related to speech, a plaintiff-employee must show: (1) he suffered an adverse employment action; (2) he spoke as a citizen on a matter of public concern; (3) his interest in the speech outweighs the government's interest in the efficient provision of public services; and (4) the speech precipitated the adverse employment action.

*Anderson v. Valdez*, 845 F.3d 580, 590 (5th Cir. 2016) (citation omitted).

With regard to his First Amendment claim, Cooksey asserts that he suffered two adverse employment actions – his "demotion" and eventual termination. Pl.'s Resp. [26] at 5. It thus appears that Cooksey is framing the issue in terms of two retaliation claims. However, Cooksey alleges that both adverse employment actions were predicated on the same protected speech, namely, his complaints of criminal activity occurring within the police department. Am. Compl. [8] ¶ 57; Pl.'s Mem. [26] at 5.

      b.    <u>Cooksey fails to create a genuine dispute of material fact on the second element, that he engaged in protected speech.</u>

Chief Elbin maintains that the speech at issue in this case was unprotected. Def.'s Mem. [12] at 10. The Court agrees, and finds that Cooksey's inability to establish this second element of a First Amendment retaliation claim is dispositive. The second prong of such a claim "subtly sets out two predicates for public-employee speech to receive First Amendment protection; the speech must be made *as a citizen*

and on *a matter of public concern.*" *Gibson v. Kilpatrick*, 773 F.3d 661, 667 (5th Cir. 2014) (emphases in original). "[A] court must first decide whether the plaintiff was speaking as a citizen disassociated with his public duties, or whether the plaintiff was speaking in furtherance of the duties of his or her public employment." *Howell v. Town of Ball*, 827 F.3d 515, 523 (5th Cir. 2016).

Speech as a citizen may trigger First Amendment protection. *Lane v. Franks*, 134 S. Ct. 2369, 2378 (2014). However, the Supreme Court has held that "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006). "Under *Garcetti* and *Lane*, the 'proper inquiry is a practical one,' and focuses solely on whether the speech at issue is ordinarily within the scope of the employee's professional duties." *Howell*, 827 F.3d at 523 (citing *Garcetti*, 547 U.S. at 424-25; *Lane*, 134 S. Ct. at 2378).

Nowhere in Cooksey's Response, nor in his Affidavit attached as an exhibit to his Response, does he assert that he spoke on the allegedly criminal matters occurring within the police department as a citizen, rather than pursuant to his ordinary official duties as Captain of Administration. The Amended Complaint alleges that "[t]he criminal matters" Cooksey complained of "are not within his duties and responsibilities as a police officer with the City of Gautier because they related to statutes and regulations which would not be investigated or prosecuted by the City of Gautier or its police force." Am. Compl. [8] ¶ 59. But at the summary

13

judgment stage, once the burden shifts to Cooksey as the nonmovant, he "must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). In other words, Cooksey's assertions in his pleadings are not enough to carry his burden of defeating qualified immunity.

Cooksey does provide some evidence of his official duties as Captain of Administration in his Affidavit, asserting that

> the Captain of Administration is viewed by police department employees, city manager, mayor and council members as being the #2 of the Police Department. The Captain of Administration handles all business related to administrative duties in the police department. If Chief Elbin was unable to attend a council meeting, I attended the meeting in his place in the event the mayor or council had questions regarding the police department. I attended all civil service meetings each month on Chief Elbin's behalf. In the Chief's absence, the Captain of Administration is in charge of the police department.
> . . . .
> Before I made my complaints, whenever Chief Elbin would be absent, Chief Elbin would send out an email to the city manager, mayor and council, human resources, fire chief, and all police department employees stating that he would be out of the office on these dates and that I was in charge in his absence.

Pl. Aff. [26-1] ¶¶ 4, 7.

Beyond these broad descriptions, Cooksey's Affidavit offers few specifics about the duties he performed. "Formal job descriptions often bear little resemblance to the duties an employee actually is expected to perform." *Garcetti*, 547 U.S. at 424-25. "[I]n the absence of any proof" of his actual day-to-day duties, the Court will not assume "that the nonmoving party could or would prove the necessary facts." *Little*, 37 F.3d at 1075. But to the extent that Cooksey did handle

14

all business related to administrative duties and was the second highest official in the police department, he has not created a genuine issue of material fact that his complaints about fellow employees were made as a private citizen.

In determining whether an employee was acting as a private citizen or pursuant to his or her official duties, "one of the factors that [the Fifth Circuit] ha[s] considered is whether the employee's complaint was made within the chain of command or to an outside actor, such as a different government agency or the media." *Gibson*, F.3d at 670. Cooksey's Affidavit indicates that he raised his complaints to Chief Elbin. Pl. Aff. [26-1] ¶ 3(a). To the extent Cooksey made his complaints to Chief Elbin, he was reporting the alleged crimes and misconduct by department employees up his chain of command.

Cooksey also asserts that he complained "about unlawful activity to the City." Pl. Aff. [26-1] ¶ 3. Cooksey's Affidavit does not identify the City official to whom he complained. Though the Amended Complaint does allege that Cooksey informed City Manager Abell, he has not stated in his Affidavit that he brought his complaints to her. Absent such an assertion, Cooksey has not shown the existence of a genuine dispute of material fact that his complaints to "the City" were not up the chain of command. This is particularly true given that Cooksey attests that in the Chief's absence, the Captain of Administration is in charge of the police department, and part of Cooksey's complaints involved reporting the misconduct of his supervisor, Chief Elbin.

While Cooksey does maintain in his Affidavit that he complained about police department employees allegedly committing unlawful activity, such as time sheet fraud, improper use of grant monies, tax evasion, and improper use of city vehicles for private use, Pl. Aff. [26-1] ¶ 3, "[a] public employee does not speak as a citizen 'whenever public corruption is involved.'" *El-Bawab v. Jackson State Univ.*, No. 3:15-CV-733-DPJ-FKB, 2018 WL 543040, at *6 (S.D. Miss. Jan. 24, 2018) (quoting *Gibson*, 773 F.3d at 669).

In sum, Cooksey "has adduced insufficient evidence here to meet his burden of producing evidence showing that his reports here were made as a citizen rather than in his official capacity." *Gibson*, 773 F.3d at 672. Furthermore, the evidence Cooksey would have required to carry his burden was or should have been within his knowledge or possession, such that he did not need discovery to uncover it. Though Cooksey raises a First Amendment claim grounded upon two separate retaliatory actions – his transfer and his termination – Cooksey alleges that both are predicated on the same speech, specifically, his complaints of allegedly unlawful activity within the police department. Because Cooksey has not shown his speech was protected under the First Amendment, he has not created a genuine dispute of fact that Chief Elbin violated his First Amendment rights. Chief Elbin in his individual capacity is entitled to summary judgment on Cooksey's First Amendment retaliation claim.

c.    <u>Cooksey fails to demonstrate that Chief Elbin violated his clearly established constitutional rights.</u>

Moreover, summary judgment should be granted to Chief Elbin because Cooksey has also failed to carry his burden of demonstrating that Chief Elbin violated clearly established law.  Qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments about open legal questions." *Ashcroft v. al–Kidd*, 563 U.S. 731, 743 (2011).  Regarding the second prong of the qualified immunity analysis, "a defendant cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." *Plumhoff v. Rickard*, 134 S. Ct. 2012, 2023 (2014).  Once a defendant properly invokes qualified immunity, the plaintiff bears the burden of proving that the defendant is not entitled to the doctrine's protection.  *See Michalik v. Hermann*, 422 F.3d 252, 258 (5th Cir. 2005).

To sustain this burden, Cooksey must show that Chief Elbin's conduct violated clearly established law by pointing the Court to "any cases of controlling authority" or "a consensus of cases of persuasive authority such that a reasonable officer could not have believed that his actions were lawful." *Wilson v. Layne*, 526 U.S. 603, 617 (1999); *see also Plumhoff*, 134 S. Ct. at 2016.  With regard to the issue of whether his speech was protected, Cooksey has not identified any precedent finding a First Amendment violation "under similar circumstances." *District of Columbia v. Wesby*, 138 S. Ct. 577, 591 (2018).

Moreover, in the Court's review of the law, it has not been clearly established that Cooksey's speech under these particular facts was protected under the First Amendment. In *Wilson v. Tegre*, 787 F.3d 322 (5th Cir. 2015), the plaintiff was employed as a chief deputy in the Sheriff's Office of St. John the Baptist Parish, Louisiana. *Id.* at 324. Wilson learned that the office's interrogation rooms were under 24-hour surveillance and that recordings were saved for up to thirty days. *Id.* Believing that the recordings might have caused legal problems for the Sheriff's Office, Wilson discussed his concerns with the Sheriff, Internal Affairs, and the District Attorney. *Id.* Wilson also spoke with the State Police after the District Attorney requested they investigate the issue. *Id.* The Sheriff later terminated Wilson's employment, and Wilson brought a § 1983 retaliation claim against the Sheriff. *Id.*

The Fifth Circuit found that Wilson was acting in the scope of his official duties as a chief deputy when he relayed his concerns to the Sheriff and to Internal Affairs because "he was simply reporting potential criminal activity up the chain of command." *Id.* at 325. "Wilson's disclosures to the District Attorney and then to the State Police also fell within the scope of his employment" because "[a]s a law enforcement officer, Wilson was required to report any action that he believed violated the law." *Id.* The court concluded that Wilson's complaints about the recordings were not protected by the First Amendment. *Id.* at 325-26.

The case here bears many factual similarities to *Wilson*. In light of *Wilson*[1] and the failure of Cooksey to point the Court to any controlling cases relevant to the particular circumstances of this case, the Court is not persuaded that it would have been objectively unreasonable for Chief Elbin to believe that Cooksey was making his complaints within the scope of performing his official duties. Chief Elbin is therefore entitled to qualified immunity as to Cooksey's First Amendment claims.

2.      Cooksey's Motion to Amend

Cooksey seeks to file a Second Amended Complaint to allege more specific factual details about his transfer and Chief Elbin's role in his termination. Cooksey's proposed amendments would be futile. "It is within the district court's discretion to deny a motion to amend if it is futile." *Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 872-73 (5th Cir. 2000). "[D]istrict courts in the Fifth Circuit have denied motions to amend as futile when the amended pleading could not survive summary judgment." *Whittington v. Minn. Life Ins. Co.*, No. CV 09-0630, 2010 WL 11610313, at *3 (W.D. La. Aug. 27, 2010). Even assuming that the proposed Second Amended Complaint were the operative pleading here, Cooksey has not raised a genuine dispute of material fact sufficient to overcome Chief Elbin's qualified immunity. Cooksey's proposed amendments do nothing to change the fact

---

[1] The Fifth Circuit issued its opinion in *Wilson* on May 22, 2015. According to a Memorandum written by City Manager Abell to Chief Elbin on July 1, 2015, Cooksey was still Captain of Administration as of that date. Abell Mem. [11-4] at 1, 5-6. Based on the record before the Court, it appears Cooksey was transferred after *Wilson* had been decided.

that he has not shown that it was clearly established law that his complaints were protected under the First Amendment, particularly in light of *Wilson*.

Moreover, granting Cooksey's Motion for Leave to Amend and requiring Chief Elbin to refile his Motion for Summary Judgment would be unduly prejudicial to Chief Elbin. Cooksey had an opportunity to oppose summary judgment with facts that were or should have been within his knowledge or possession, yet did not succeed in doing so. Though Cooksey has repeatedly maintained that he needs discovery to respond to Chief Elbin's Motion, the Court is not persuaded that he needed discovery to show a genuine dispute of fact regarding whether he made his complaints pursuant to his ordinary official duties. Rather, such information would have already been within Cooksey's knowledge.

Cooksey partly seeks to amend his pleading to allege that Chief Elbin played a role in his termination. Notably, Cooksey has only sought to plead this new theory that Chief Elbin terminated him after Chief Elbin moved for summary judgment and after the Court found that the Amended Complaint alleges that the City and its administrators terminated Cooksey, Order [22] at 10, and that the Amended Complaint does not contain any specific factual assertion to indicate that Chief Elbin terminated Cooksey, *id.* Allowing Cooksey to amend his Amended Complaint to assert these expanded allegations would permit Cooksey to make an end-run around the Magistrate Judge's and this Court's discovery rulings. Because of the futility of Cooksey's proposed amendments, and the undue prejudice it would cause Chief Elbin, Cooksey's Motion for Leave to Amend should be denied.

## III. CONCLUSION

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that Plaintiff Jerry Cooksey's Motion [25] for Leave to Amend is **DENIED.**

**IT IS, FURTHER, ORDERED AND ADJUDGED** that Defendant Dante Elbin's Motion [11] for Summary Judgment as to Qualified Immunity is **GRANTED**.  Plaintiff Jerry Cooksey's claims against Defendant Elbin in his individual capacity are **DISMISSED WITH PREJUDICE**.  Cooksey's claims against Defendants City of Gautier and Dante Elbin in his official capacity will proceed.

**SO ORDERED** this the 20th day of August, 2018.

*s/ Halil Suleyman Ozerden*

HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE