## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **JERRY COOKSEY** | § | **PLAINTIFF** |
| | § | |
| | § | |
| **v.** | § | **Civil No. 1:16cv448-HSO-JCG** |
| | § | |
| | § | |
| **CITY OF GAUTIER and DANTE** | § | |
| **ELBIN,** *in his Official Capacity as* | § | |
| *Chief of Police for the City of* | § | |
| *Gautier* | § | **DEFENDANTS** |

## MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTION [47] FOR SUMMARY JUDGMENT

BEFORE THE COURT is the Motion [47] for Summary Judgment filed by Defendants, the City of Gautier and Dante Elbin ("Chief Elbin"), in his official capacity as Chief of Police for the City of Gautier (collectively "the City"). Plaintiff Jerry Cooksey ("Cooksey"), a former Gautier police officer, brought claims against Defendants under 42 U.S.C. § 1983 claiming that he reported to Chief Elbin and the City administration that City employees were committing numerous crimes. Chief Elbin allegedly responded by demoting Cooksey to a less desirable position, and Cooksey eventually resigned from his employment with the City. The City and Chief Elbin maintain that Cooksey released his claims against them when he was permitted to resign in lieu of termination for sexual harassment.

After due consideration of the record, the submissions on file, and relevant legal authority, the Court finds that Defendants' Motion should be granted and Cooksey's claims against them should be dismissed with prejudice.

## I. BACKGROUND

A. Factual background

At all times relevant to this dispute, Jerry Cooksey was employed as a police officer with the City of Gautier, Am. Compl. [8] ¶ 7, and worked as Captain of Administration, which according to him was second-in-command to the police chief, *id*. ¶ 8. Chief Elbin was the chief of police. *See id*. ¶ 10. Cooksey alleges that he learned of criminal acts being committed within the police department, such as employees fabricating time cards, improperly spending grant funds, and committing fraud, embezzlement, and tax evasion. *Id*. ¶ 11-15. Cooksey reportedly informed Chief Elbin of these criminal acts. *Id*. ¶ 10.

Cooksey asserts that during the summer of 2015 he informed City Manager Samantha Abell about the alleged crimes he had reported to Chief Elbin. *Id*. ¶ 19. Abell allegedly became irritated with Cooksey and accused him of lying, *id*., and reported to Chief Elbin that Cooksey was attempting to undermine him, *id*. ¶ 22. Elbin, in turn, admonished Cooksey for reporting to Abell. *Id*. ¶ 22, 24. Cooksey was later transferred to the position of Captain of the Patrol Division, which Cooksey claims was "a demotion which was much less desirable than Captain of Administration." *Id*. ¶ 24.

In September 2016, City Attorney Josh Danos received two complaints from Gautier police officers that they had been sexually harassed by Cooksey. Def. Ex. G [47-7] at 1. Cooksey was immediately placed on administrate leave pending the completion of the investigation. *Id.* The investigation, conducted by the new City Manager Paula Yancy, found that "[t]he actions of Cooksey constitute sexual harassment, bullying, retaliation, hostile work environment, harassment, insubordination, conduct unbecoming an officer and discourtesy . . ." and recommended that Cooksey be fired. Def. Ex. G [47-7] at 8. On October 18, 2016, Cooksey, through his attorney Keith Miller, declined the City's request for his resignation and decided to seek a hearing before the Civil Service Commission. Def. Ex. H [47-8]. Yancy then executed a termination notice for Cooksey on October 21, 2016. Def. Ex. I [47-8].

Around this time, the Chief of Police for the City of Moss Point contacted Cooksey and offered him a position in the Moss Point Police Department. Def. Ex. D [47-4], Cooksey Dep., at 98-99. However, Cooksey was told by his attorney Miller that he would not be eligible for the position if he was terminated by the City of Gautier. *Id.* at 102. Miller also informed Cooksey that the City of Gautier would allow him to resign in lieu of termination in exchange for signing a hold harmless agreement. *Id.* at 103. Cooksey agreed and signed a resignation letter to the City composed by Miller. *Id.*; Def. Ex. K [47-11]. Cooksey also executed a hold harmless agreement which stated:

> In exchange for the City accepting my resignation . . . I release and hold
> harmless the City from any possible action I might initiate as a result of

3

> my employment or the circumstances involving the cessation of my employment. By signing this document, I represent I will not challenge the circumstances of my separation from the employment of the City, and hereby waive any legal action I may take, and any claim I may have, as a result of same.

Def. Ex. A [47-1] at 1. Cooksey has testified in this case that if he had not resigned from the City and instead pursued an appeal of his termination, he likely would not have been hired by another law enforcement agency because "even winning the civil service appeal, another department would not want to take on that chance of hiring someone who's been already accused once of this." Def. Ex. D [47-4], Cooksey Dep., at 113.

After his resignation, Cooksey was not ultimately hired by the City of Moss Point, Am. Compl. ¶ 43, however, he eventually obtained employment with the Jackson County Sherriff's Department, Def. Ex. D [47-4], Cooksey Dep., at 114-15. Cooksey now asserts that the Cities of Gautier and Moss Point conspired to induce him to waive any possible claims he had against the City of Gautier while also ensuring that he was not hired by the City of Moss Point. *Id.* at ¶ 37.

B. <u>Procedural history</u>

Cooksey filed a Complaint [1] in this Court on December 29, 2016, advancing claims under 42 U.S.C. § 1983 for deprivation of his freedom of speech. Compl. [1] at 8. On April 13, 2017, the City of Gautier and Chief Elbin filed an Answer [3], raising numerous defenses, including that Chief Elbin was entitled to qualified immunity on the individual capacity claims against him. Answer [3] at 9.

On September 1, 2017, Cooksey filed an Amended Complaint [8], which is the operative pleading. The Amended Complaint advances a claim under 42 U.S.C § 1983 styled as a cause of action for "Due process – freedom of speech." Am. Compl. [8] at 8. Cooksey alleges that "Defendants retaliated against Cooksey" for exercising his constitutional right to free speech in complaining of and reporting the unlawful acts, *id.*, and that Defendants had no good faith basis for the retaliatory termination, *id.*

The Amended Complaint seeks a declaratory judgment that Cooksey's release of any claims he may have against the City is invalid based on numerous contract defenses and is a violation of his constitutional rights to free speech and to petition the government. *Id.* Cooksey raises a "taxpayer cause of action" on grounds that Defendants unlawfully expended taxpayer funds in violation of state and federal law. *Id.* at 9. Lastly, Cooksey claims that by terminating him for reporting criminal acts, "Defendants violated Mississippi's public policy exception to at will employment." *Id.*

Chief Elbin filed a Motion [11] for Summary Judgment, contending that he was entitled to qualified immunity in his individual capacity. Ultimately, the Court granted the Motion [11] and dismissed Cooksey's claims against Chief Elbin in his individual capacity. *See* Order [31].

The City[1] has now filed the present Motion [47] for Summary Judgment, seeking judgment as a matter of law on all of Cooksey's claims. Def.'s Mem. [48] at

---

[1] While Chief Elbin is still a party to this suit in his official capacity, a suit against a government official in his official capacity is treated as though it is a suit against the government entity.

1-2.  The crux of the City's argument is that Cooksey waived any claims that he may have against the City when he signed the hold harmless agreement.  *Id.* at 1. The City further maintains that, even if Cooksey did not waive his ability to sue, his claims are meritless.  *Id.* at 2.  In his Response [50], Cooksey asserts that the hold harmless agreement lacked consideration, was the product of duress, and that the City breached its duty of good faith and fair dealing.  Pl.'s Mem. [50] a 1.  Cooksey did not respond to or address the merits of his 42 U.S.C. § 1983 claim.  *Id.*

## II.  DISCUSSION

### A.  Legal Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  If the movant carries this burden, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial."  *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

To rebut a properly supported motion for summary judgment, the opposing party must show, with "significant probative evidence," that there exists a genuine issue of material fact.  *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000).  "A genuine dispute of material fact means that evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Royal v. CCC&R Tres Arboles, L.L.C.*, 736 F.3d 396, 400 (5th Cir. 2013) (quotation omitted).  If the

---

*Kentucky v. Graham*, 473 U.S. 159, 164-66 (1985).  Thus, the City and Chief Elbin constitute a single entity and Cooksey's claims against them will be treated as claims against the City.

evidence is merely colorable, or is not significantly probative, summary judgment is appropriate. *Cutting Underwater Techs. USA, Inc. v. ENI U.S. Operating Co.*, 671 F.3d 512, 516 (5th Cir. 2012) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). In deciding whether summary judgment is appropriate, the Court views facts and inferences in the light most favorable to the nonmoving party. *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 858 (5th Cir. 2010).

B.    Analysis

1.    There can be no genuine dispute of material fact that Cooksey waived his right to sue the City when he signed the release, waiver, and hold harmless agreement.

Both parties agree that when Cooksey resigned his position, he signed a hold harmless agreement which released the City from all claims Cooksey may have had regarding his employment or the cessation of his employment. *See* Def.'s Mem. [48] at 13; Pl.'s Mem. [50] at 10-12. The City contends that the hold harmless agreement is valid and bars Cooksey from bringing the claims he raises in this lawsuit. Def.'s Mem. [48] at 14. Cooksey argues that the hold harmless agreement is not enforceable and summary judgment should be denied on the grounds that the hold harmless agreement i) lacked consideration; ii) was signed under duress; and iii) because the City breached the duty of good faith and fair dealing. Pl.'s Mem. [50] at 10-12.

The parties do not dispute that Mississippi law controls the outcome on this issue. *Commonwealth Land Title Ins. Co. v. Encore Credit Corp.*, No. 1:08cv37, 2009 WL 10722164, at *2 (S.D. Miss. Apr. 16, 2009) (applying Mississippi contract law when both parties rely on it in their memoranda); Def. Mem. [48] at 14

(applying Mississippi contract law to the hold harmless agreement); Pl. Mem. [50] at 10 (same). "A contract exists under Mississippi law where there are (1) two or more contracting parties, (2) consideration, (3) an agreement that is sufficiently definite, (4) the parties have the legal capacity to make a contract, (5) mutual assent and (6) no legal prohibition precluding contract formation." *Palmer v. Sec. Life Ins. Co. of Am.*, 189 F. Supp. 2d 584, 589 (S.D. Miss. 2001) (citing *Hunt v. Coker*, 741 So. 2d 1011, 1015 (Miss. Ct. App. 1999)); *see also Ramsey v. Georgia-Pacific Corp.*, 511 F. Supp. 393, 406 (S.D. Miss. 1981) (applying Mississippi contract law in determining validity of hold harmless agreement).

Courts apply the "four corners" test when interpreting a clear and unambiguous contract "wherein the reviewing court looks to the language that the parties used in expressing their agreement." *Royer Homes of Miss. Inc. v. Chandeleur Homes, Inc.*, 857 So. 2d 748, 752 (Miss. 2003). Because the Court finds that there can be no genuine dispute of material fact about whether the hold harmless agreement between Cooksey and the City is enforceable, the agreement should be enforced, and Cooksey's claims are barred by the agreement.

a.   Consideration

According to Cooksey, the agreement is unenforceable because it lacked consideration. Pl.'s Mem. [50] at 10. Cooksey maintains that he was originally offered the opportunity to resign without signing a hold harmless agreement but was later told that his resignation was dependent upon signing such an agreement.

*Id.* at 10-11.  Cooksey argues that he was not given additional consideration in exchange for executing the hold harmless agreement, making it void.  *Id.*

The Mississippi Supreme Court has held that "[a]ll that is needed to constitute a valid consideration to support an agreement or contract is that there must be either a benefit to the promisor or a detriment to the promissee."  *Theobald v. Nosser*, 752 So. 2d 1036, 1040 (Miss. 1999).  New or additional consideration is required only to modify an existing written contract.  *Lafayette Steel Erectors, Inc. v. Roy Anderson Corp*, 71 F. Supp. 2d 582, 586 (S.D. Miss. 1997) (citing *Iuka Guar. Bank v. Beard*, 658 So. 2d 1367, 1372 (Miss. 1995)).  The agreement in this case states that Cooksey was under internal investigation at the time he signed it.  Def. Ex. A [48-1] at 1.  It further explains that the City offered Cooksey the opportunity to resign before the investigation concluded.  *Id.*  In exchange for the chance to resign, Cooksey agreed to:

> release and hold harmless the City from any possible action [Cooksey] might initiate as a result of [his] employment or the circumstances involving the cessation of [his] employment.

*Id.*  In other words, Cooksey, the promisor, gained a benefit from agreeing to hold the City harmless from any possible claims in that he was permitted to resign before the City finished its internal investigation against him.  This is sufficient consideration on its face to support the enforceability of the agreement.  *Theobald*, 752 So. 2d at 1040.

It is undisputed that the hold harmless agreement signed by Cooksey is the only written agreement between the parties.  Cooksey does not allege that this

written contract was later modified without additional consideration. Instead, Cooksey argues that the hold harmless agreement changed the terms of a previous oral understanding he had reached with the City. Even if this were true, the requirement of additional consideration only applies to the modification of written contracts already in existence. *Lafayette Steel Erectors, Inc.*, 71 F. Supp. 2d at 586. Therefore, new or additional consideration was not necessary for the hold harmless agreement to be enforceable.

    b.   <u>Duress</u>

Next, Cooksey claims that the agreement is invalid because he entered into it under duress. Pl.'s Mem. [50] at 11. Cooksey asserts that if he had not signed the hold harmless agreement and resigned, he would have been ostracized by the law enforcement community and unable to find a new job. *Id.* He argues that because he signed the agreement in order to escape the consequences of the City's investigation of him, the agreement was the product of duress. *Id.*

A contract may be voided on grounds of duress when "[a] dominant party . . . conducts himself or herself in a manner that overrides the volition of the weaker party." *Estate of Davis v. O'Neill*, 42 So. 3d 520, 525 (Miss. 2010). "But duress cannot be established with mere insistence by one party of a legal right to which the other party yields." *Id.; see also Patterson v. Merchs. Truck Line, Inc.*, 448 So. 2d 288, 291 (Miss. 1984) ("It is never duress to threaten to do that which a party has a legal right to do . . .") (quotation omitted). Here, Cooksey contends that he was coerced into signing the hold harmless agreement by the City's threat to make an

official finding regarding the internal investigation into the sexual harassment allegations against him. Pl.'s Mem. [50] at 11; Def. Ex. A [47-1] at 1. However, the City had a right to investigate its employees in response to sexual harassment allegations and to make appropriate findings based upon those investigations. *See Hall v. Bd. of Trs. of State Insts. of Higher Learning*, 712 So. 2d 312, 323-24, 326 (Miss. 1998) (approving a public employer's decision to investigate sexual harassment claims against an employee due to "the seriousness of the charge and the potential liability" to the employer). Thus, the City's actions cannot form the basis of a duress defense to contract formation.

Cooksey also argues that the sexual harassment allegations against him were false and designed to force him to resign. Pl. Mem. [50] at 11. Under this theory, Cooksey was coerced into signing the hold harmless agreement because the City threatened to release the findings of a fabricated investigation. *Id.* While Cooksey claims that the allegations against him are "vigorously disputed," he offers insufficient evidence to support his contention.[2] As such, Cooksey has failed to carry his summary judgment burden in showing that he was under duress when he signed the hold harmless agreement because of a false investigation. *See Forsyth v.*

---

[2] To support this claim, Cooksey only offers testimony from another officer in the Gautier Police Department that a sexually harassing phrase which Cooksey was found to have used was also used by "eighty, ninety percent" of the other officers in the department. Pl. Ex. G [50-7], p. 26. However, the sexual harassment investigation against Cooksey was not based on this single phrase but several allegations of sexually harassing conduct. Def. Ex. G [47-7] at 2. Cooksey also offers evidence that two male employees were not punished by the City when they were found to have sexually harassed female employees. Pl. Ex. F [50-6], p. 23-24; Pl. Ex. D [50-4], p. 38-39. Cooksey does not offer any other evidence regarding these alleged incidents, and he has not addressed the fact that the City's investigation concluded that Cooksey had not only sexually harassed another officer but had also "violated numerous provisions and pages of the [Standing Operating Procedure]," any one of which "would constitute grounds for termination." Def. Ex. G [47-4] at 8.

*Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994) ("Unsubstantiated assertions are not competent summary judgment evidence.").

Further, the circumstances surrounding the execution of the agreement do not indicate duress. It is undisputed that Cooksey was represented by an attorney, Keith Miller, throughout his negotiations with the City. Def. Ex. D [47-4] at 111-17; Def. Ex. H. Cooksey also testified that he understood the terms of the agreement, specifically that he was being allowed to resign in lieu of termination in exchange for waiving any possible claims that he may have against the City. Def. Ex. D [47-4] at 111-14. In fact, it was Cooksey and his attorney who asked the City for the option to resign. *Id.* at 102-03. Thus, the undisputed material facts in the record lead the Court to conclude that the circumstances under which Plaintiff signed the hold harmless agreement did not constitute duress. *See Limbert v. Miss. Univ. for Women Alumnae Ass'n, Inc.*, 998 So. 2d 993, 999 (Miss. 2008) (finding no duress where both parties were represented by counsel, negotiated an agreement, and understood the agreement).

c.  Breach of good faith and fair dealing

Finally, Cooksey argues that the hold harmless agreement is not enforceable because the City breached its duty of good faith and fair dealing. Pl.'s Mem. [50] at 11. He maintains that the sole purpose of the agreement was to allow Cooksey to make a lateral transfer to the Moss Point Police Department. *Id.* Because the City did not ultimately inform Moss Point officials that Cooksey was available for a

lateral transfer, he was not hired there, frustrating the purpose of the agreement and breaching the City's duty of good faith and fair dealing. *Id.* at 11-12.

Cooksey's allegations, even if true, would not impair the enforceability of the hold harmless agreement. "The appropriate remedy for the breach of the covenant of good faith is the measure of expectancy type damages." *Cenac v. Murry*, 609 So. 2d 1257, 1273 (Miss. 1992). Therefore, even if the City had breached its duty under the hold harmless agreement, it would owe contract damages but this would not rescind the agreement. *Id.* at 1273-74. Further, the City's alleged breach of this duty would constitute a separate cause of action which Cooksey has pleaded for the first time in his Response [50] to this Motion. When a plaintiff raises a cause of action for the first time in response to a dispositive motion, the Court may construe the argument as a motion to amend the pleadings under Rule 15 of the Federal Rules of Civil Procedure. *Sherman v. Hallbauer*, 455 F.2d 1236, 1242 (1972). Here, the Court has considered Cooksey's claim for breach of good faith and fair dealing and finds that the City has met its summary judgment burden. *Stover v. Hattiesburg Pub. Sch. Dist.*, 549 F.3d 985, 989 n.2 (5th Cir. 2008) (finding no error where district court considered plaintiff's claim asserted for the first time in response to defendant's motion for summary judgment).

Under Mississippi law, "all contracts contain an implied covenant of good faith and fair dealing in performance and enforcement." *Cenac*, 609 So. 2d at 1272. The Mississippi Supreme Court has defined a breach of the good faith covenant as "bad faith characterized by some conduct which violates standards of decency,

fairness or reasonableness." *Id.* Even though a party does not violate an express provision of an agreement, he may still breach his duty of good faith if his conduct undermines the parties' justifiable expectations "that the contract will be performed in a manner consistent with its 'agreed purpose.'" *Jones v. Miss. Insts. of Higher Learning*, 264 So. 3d 9, 20-21 (Miss. Ct. App. 2018), *cert. denied*, 263 So. 3d 666 (Miss. 2019); *see also Cenac*, 609 So. 2d at 1272 ("Good faith is the faithfulness of an agreed purpose between two parties, a purpose which is consistent with justified expectations of the other party.").

The City argues that it did not breach its duty of good faith because facilitating Cooksey's transfer to the Moss Point Police Department was not the agreed-upon purpose of the hold harmless agreement. Def.'s Reply [52] at 5. It contends that Cooksey's transfer could not have been the purpose of the contract because the hold harmless agreement is completely silent regarding Cooksey's prospective employment. *Id.*; Def. Ex. A [47-1]. Further, Cooksey testified that he knew the agreement did not mention his possible employment with Moss Point and that the City did not make any promises to him not included in the agreement. Def. Ex. D [47-4] at 116-18. Finally, Cooksey understood that only the Moss Point Board of Aldermen had the authority to hire him as a police officer and that it was under no obligation to do so. Def. Ex. D [47-4] at 106-07.

Cooksey nevertheless offers two pieces of evidence which he asserts show that his transfer to the Moss Point Police Department was the "entire purpose of the agreement." Pl.'s Mem. [50] at 12. First, Cooksey argues that an email exchange

between his attorney, Keith Miller, and the City's attorney, Joshua Danos, demonstrates that Chief Dante Elbin was responsible for informing the City of Moss Point that Cooksey was eligible for a transfer.[3]  Pl. Ex. I [50-9].  Second, Cooksey highlights Chief Elbin's deposition during which he testified that he did not inform anyone in Moss Point that Cooksey had resigned and was free to transfer there.  Pl. Ex. D [50-4].  According to Cooksey, the email exchange coupled with Chief Elbin's testimony make it clear that the City knew that the purpose of the agreement was for Cooksey to transfer to Moss Point and, by not informing Moss Point of Cooksey's resignation, the City frustrated that purpose.  Pl.'s Mem. [50] at 11-12.

Viewing this evidence in the light most favorable to Cooksey as the nonmoving party, he cannot survive summary judgment.  Even if the underlying purpose of Cooksey's resignation was to facilitate a transfer to the Moss Point Police Department, it was not justifiable for Cooksey to expect the City to secure him a transfer.  In *Crosby Mem'l Hosp. v. Abdallah*, the Fifth Circuit found that the defendant did not breach its duty of good faith when the plaintiff was unjustified in her expectations.  No. 01-60329, 2002 WL 31016466, at*13 (5th Cir. Aug. 13, 2002).  In that case, a pediatrician was recruited by a hospital to practice in rural Mississippi because of the severe shortage of doctors in the area.  *Id.*  When the hospital recruited more doctors to the same location, the pediatrician claimed that the hospital was breaching its duty of good faith because she did not expect it to

---

[3] In an email to Josh Danos, Keith Miller asks him to inform a Moss Point Alderman, Wayne Lennep, that Mr. Cooksey was not terminated by the City.  Pl. Ex. I [50-9] at 1.  Josh Danos replied "I want you to know I had the Chief relay that information to multiple people prior to the meeting."  *Id.*

hire more doctors and dilute the healthcare market. *Id.* The court concluded that the pediatrician's expectations were unjustified because the hospital did not promise to stop hiring more doctors and the pediatrician should have known that the hospital would continue to recruit physicians to an underserved area. *Id.*

Similarly, Cooksey's expectations that the City would gain him employment in Moss Point by way of lateral transfer were not justified. Cooksey acknowledged in his deposition that the City did not (and could not) promise him any employment in Moss Point. Def. Ex. D [47-4] at 116-18. Cooksey knew that only the Moss Point Board of Aldermen had the authority to hire him as a police officer, *id.* at 106-07, and because he knew this it was unjustifiable for him to expect the City of Gautier to secure his employment. Thus, the City did not breach any duty of good faith when it did not inform Moss Point that Cooksey was eligible for a transfer.

Cooksey has also failed to allege any conduct on behalf of the City that would rise to the level of bad faith. In *Cenac*, the leading Mississippi case on the implied covenant of good faith, the plaintiffs' lives were made "a living hell" by the defendant's "abusive, aberrant, intimidating, [and] harassing behavior." *Cenac*, 609 So. 2d at 1257. Cooksey, on the other hand, is claiming only that the City did not tell Moss Point that he was eligible for a transfer when it allegedly agreed that it would. This conduct, even if true, does not rise to the level of bad faith contemplated by *Cenac. See Stewart v. GMAC Mortg., LLC*, No. 2:10cv149, 2011 WL 1296887, at *5 (S.D. Miss. Mar. 31, 2011) ("Defendants . . . are alleged merely to have failed to follow through on verbal promises . . . this behavior does not appear

to be so egregious as to amount to a breach of the duty of good faith and fair dealing."). Even if Cooksey could show that the City may have been negligent, this is not the "conscious wrongdoing motivated by any dishonest purpose" required to support a breach of good faith claim. *Montgomery v. CitiMortgage, Inc.*, 955 F. Supp. 2d 640, 653 (S.D. Miss. 2013); *see also Teeuwissen v. JP Morgan Chase Bank, N.A.*, 902 F. Supp. 2d 826, 827 (S.D. Miss. 2011) (holding that the defendant's merely negligent conduct could not breach the implied covenant of good faith). The Court finds that the City is entitled to judgment as a matter of law on this claim.

2.    Cooksey has waived his § 1983 claim against the City because he failed to address it in his response to the City's motion.

In his Amended Complaint, Cooksey advances a cause of action under 42 U.S.C. § 1983 against the City for violating his right to freedom of speech. Am. Compl. [8] at 8. The City argues in its Motion [48] for Summary Judgment that Cooksey's § 1983 claim should be dismissed because he has failed to produce sufficient evidence that his alleged statements constituted protected speech. Def.'s Mem. [48] at 18.

The Court finds that the City has carried its initial summary judgment burden on this issue. Cooksey did not respond to or address the City's argument in his Response [50] and has not carried his burden in rebutting the City's properly supported Motion. Summary judgment is appropriate for this reason. *See also Kennan v. Tejeda*, 290 F.3d 252, 262 (5th Cir. 2002) ("If a party fails to assert a legal reason why summary judgment should not be granted, that ground is waived . . ."); *Balder v. Lavin*, No. 2:16cv130, 2018 WL 2976105, at *3 (S.D. Miss. June 13,

2018) (dismissing plaintiff's claim and finding it waived when plaintiff failed to argue why summary judgment should not be granted). The Court finds that the City carried its initial summary judgment burden on this claim, and in response Cooksey has not offered any legal reason why summary judgment should not be granted.

### III.   CONCLUSION

**IT IS THEREFORE, ORDERED AND ADJUDGED** that, the Motion [47] of Defendants City of Gautier and Dante Elbin, in his official capacity as Chief of Police, for Summary Judgment is **GRANTED**. Plaintiff Jerry Cooksey's claims against Defendants are **DISMISSED WITH PREJUDICE**. The Court will enter a separate Final Judgment in accordance with Federal Rule of Civil Procedure 58.

**SO ORDERED** this the 12th day of March, 2020.

*s/ Halil Suleyman Ozerden*
HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE